UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PETER TONDREAU,

                Plaintiff.

 -against-

CITY OF NEW YORK, OFFICER G. MEJIA
(Shield # 30139), OFFICER B. JAGDEO
(Shield #11335), OFFICER L. PREHN (Shield #4778),
 and SERGEANT G. FALJEAN (Tax # 930122),
individually and in their official capacities,

                Defendants.
------------------------------------------------------------x

**COMPLAINT
AND DEMAND FOR
JURY TRIAL**

      Plaintiff, PETER TONDREAU, by and through his attorneys, **Fisher, Byrialsen & Kreizer PLLC,** complaining of the defendants herein, respectfully shows the Court and alleges:

## PRELIMINARY STATEMENT

      1.     This is a civil rights action in which the Plaintiff, PETER TONDREAU, seeks relief for defendants' violations, under color of state law, of his rights, privileges and immunities secured by the 42 U.S.C. § 1983; the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

      2.     Defendants, the City of New York, OFFICER G. MEJIA (Shield # 30139), OFFICER B. JAGDEO (Shield #11335), OFFICER L. PREHN (Shield #4778), and SERGEANT G. FALJEAN (Tax # 930122), individually and in their official capacities, jointly and severally, did cause Plaintiff PETER TONDREAU to be subject to, *inter alia,* an

unreasonable search, excessive and unreasonable force, and false arrest and imprisonment causing his loss of liberty and physical and mental injury.

3. Plaintiff seeks (i) compensatory damages for physical injury, psychological and emotional distress, and other financial loss caused by the illegal actions of the defendants; (ii) punitive damages to deter such intentional or reckless deviations from well-settled constitutional laws; and (iii) such other and further relief, including costs and attorneys fees, as this court deems equitable and just.

## JURISDICTION

4. This action is brought pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, and the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

## VENUE

6. Venue is properly laid in the United States District Court for the Southern District of New York under 28 U.S.C. § 1391(b)(2), this being the District in which the claims arose.

## TRIAL BY JURY

7. Plaintiff demands a trial by jury on each and every one of his claims as pled herein pursuant to Fed., R. Civ. P. 38(b).

## **PARTIES**

8. At all times relevant hereto Plaintiff was and is a resident of New York, New York.

9. At all times relevant hereto defendant THE CITY OF NEW YORK (hereinafter, "NYC") was and is a municipality of the State of New York and owns, operates, manages, directs, and controls the New York City Police Department, which employs the other named Defendants.

10. At all times relevant to this action, Defendants OFFICER G. MEJIA (Shield # 30139), OFFICER B. JAGDEO (Shield #11335), OFFICER L. PREHN (Shield #4778), and SERGEANT G. FALJEAN (Tax # 930122), are and were police officers employed by the New York City Police Department (hereinafter, "NYPD"), and acting under color of state law. They are being sued in both their individual and official capacities.

11. At all times relevant hereto and in all their actions described herein, the Defendants OFFICER G. MEJIA (Shield # 30139), OFFICER B. JAGDEO (Shield #11335), OFFICER L. PREHN (Shield #4778), and SERGEANT G. FALJEAN (Tax # 930122), individually and in their official capacities, were acting under color of statutes, ordinances, regulations, policies, customs, and usages of the NYPD and NYC, pursuant to their authority as employees, servants, and agents of the NYPD within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers.

12. NYC was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants and/or employees of the NYPD. They are being sued both in their individual and official capacities.

## FACTS

13. The incident occurred on the early morning hours of October 28, 2013 at approximately 12:30 am in the intersection of Canal Street and Orchard Avenue in New York County.

14. Prior to this time, Mr. Tondreau and his business associate, Mr. Timothy Woldt (hereinafter "business associate"), had finished setting up a "pop-up" restaurant at a holiday market being held on 34th Street in Herald Square at approximately 11:00 pm on October 27, 2013 and traveled downtown to a restaurant and bar called *Forget Me Not* on Vision Street, one block from the intersection of Canal Street and Orchard Avenue, to discuss the opening of the pop-up restaurant the next day.

15. Mr. Tondreau and his business associate left the bar at approximately 12:30 am on October 28, 2013.

16. At that time, Mr. Tondreau proceeded to take one or two steps from the sidewalk onto the roadway to hail a taxi. He was not obstructing any vehicular traffic while hailing the cab.

17. At that time, a police vehicle driven by Officer G. Mejia (Shield # 30139) and his partner Officer B. Jagdeo (Shield # 11335) of the Seventh Precinct pulled up. One of the police officer rolled down the window and the officer said "get the fuck out."

18. Then, the two officers pulled the cab over, and without the requisite level of probable cause, threw Mr. Tondreau to the ground on his back and beat him about the head, face, and body with closed fists.

19. As Mr. Tondreau is forcefully taken to the ground, a second police vehicle driven by Sergeant G. Faljean (Tax # 930122) and Officer L. Prehn (Shield # 4778) pull up to the scene.

20. One of the officers from the second police vehicle got on top of Mr. Tondreau and proceeded to punch him about the face, head, upper body, wrist, and shoulder.

21. Mr. Tondreau's business associate observed the entire incident. His business associate was initially standing less than five feet away, but in an effort to conspire to conceal the acts taken by the other officers in assaulting Mr. Tondreau, one officer commanded him to back up while threatening him with a displayed a Taser gun.

22. Though Mr. Tondreau's business associate complied with the officer's orders and backed up to approximately ten feet away, his business associate clearly saw the officers use their Taser guns on Mr. Tondreau seven or eight times.

23. As Mr. Tondreau is being tased seven or eight times and beaten about the head, face, and body, he repeatedly screamed "stop, what are you doing, why are you doing this. You have no reason to do this."

24. Mr. Tondreau is ultimately put in a position on his stomach, his head pressed against the concrete road, his hands behind his back, and the weight of four officers bearing down on him. He in no way posed a threat to any officer or others or resisted arrest.

24. At that time, Mr. Tondreau's business associate attempted to invoke his First Amendment right by filming government agents, here police officers, engaged in their duties and performing their responsibilities in a public place. However, as his business associate took out his cell-phone to videotape the officers' assault on Mr. Tondreau, the officers conspired together to cover up the assault and retaliated against the business associate by ordering his arrest.

25. Minutes later, Mr. Tondreau was picked up by the arms and dragged to the nearest police vehicle.

26. Mr. Tondreau and his business associate were taken to the Seventh precinct and held there until approximately 7 am.

27. However, after being fingerprinted and photographed, Mr. Tondreau was admitted at Bellevue Hospital at approximately 1:58 am. The records indicate that Mr. Tondreau was "awake, alert, and oriented x3." He received a cast for his left wrist, treatment for his taser burns, and medication for the pain. He then was transported back to the Seventh Precinct.

28. From the Seventh Precinct, Mr. Tondreau and his business associate were taken to Central Booking. Both of them were arraigned at approximately 4 pm and released on their own recognizance. Mr. Tondreau returned to Court on six separate occasions: December 17, 2013, February 6, 2014, March 24, 2014, May 6, 2014, June 14, 2014, and July 24, 2014.

29. Mr. Tondreau accepted an Adjournment in Contemplation of Dismissal and 35 hours of community service on July 24, 2014. Mr. Tondreau complied with the community service requirements at Mount Sinai Hospital and his case was dismissed and sealed on January 23, 2015. Mr. Tondreau had never previously been arrested and has never been convicted of a crime.

30. As a result of his unlawful detention, imprisonment, and arrest, Mr. Tondreau incurred $6,360.00 in attorney's fees.

31. As a result of his unlawful detention, imprisonment, and arrest, Mr. Tondreau incurred foreseeable financial loss stemming from this incident.

32. After notification of his arrest, the State of New York Department of Food and Beverages denied his pending beer and liquor license application for his restaurant *Bar Suzette LLC*. Mr. Tondreau specifically chose to lease a large retail location for his restaurant on the assumption that he would be granted the beer and liquor license. In fact, a substantial portion of

the restaurant was devoted to a bar. The liquor license denial caused him to lose not only revenue from lost sales but to also incur significant unnecessary rent expenses. Mr. Tondreau paid attorney Alexander Victor Esq., 18 East 41st Street 10th Floor, New York, New York 10017, $3,000.00 to represent him in *Bar Suzette LLC's* liquor license renewal application.

33. As a result of his unlawful detention, imprisonment, and arrest, Mr. Tondreau experienced, and continues to experience, humiliation, embarrassment, anxiety, and loss of sleep.

34. This action is commenced within one year and ninety days of the occurrence herein.

### FIRST CLAIM FOR RELIEF: DEPRIVATION OF FEDERAL CIVIL RIGHTS
(General Allegations, Fourth, Fifth and Fourteenth Amendments)

35. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

36. All of the aforementioned acts of Defendants, their agents, servants, and employees were carried out under color of state law.

37. All of the aforementioned acts deprived Plaintiff of the rights, privileges, and immunities guaranteed citizens of the United States by the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, including, but not limited to:

    a. the right to be free from unreasonable searches of his person,

    b. the right to be free from unreasonable seizure of his person, including excessive force,

    c. the right to be free from arrest without probable cause,

d. the right to be free from false imprisonment, that being wrongful detention without good faith, reasonable suspicion or legal justification, and of which detention, plaintiff was aware and to which she did not consent.

e. the right to be free from the lodging of false charges against him by police officers,

f. the right to be free from abuse of process,

g. the right to be free from deprivation of liberty without due process of law, and

h. the right to equal protection, privileges and immunities under the laws.

38. All of the aforementioned acts were carried out in violation of 42 U.S.C. § 1983.

39. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with the entire actual and/or apparent authority attendant thereto.

40. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

41. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure, or rule of his respective municipality/authority, which is forbidden by the Constitution of the United States.

42. By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually and jointly liable.

## SECOND CLAIM FOR RELIEF:
## FALSE ARREST

43. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

44. As a result of Defendants' aforementioned conduct, Plaintiff was subject to an illegal, improper, and false seizure and arrest by the Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated, and prosecuted by the Defendants in criminal proceedings, without any probable cause, privilege, or consent.

45. As a result of his false arrest, Plaintiff was subjected to severe emotional distress, humiliation, ridicule, and disgrace and was deprived of his liberty.

46. All of the aforementioned acts of the Defendants constituted false arrest under the laws of the United States Constitution and the Defendants are liable for said damage.

### THIRD CLAIM FOR RELIEF: FALSE IMPRISONMENT

47. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

48. As a result of his false imprisonment, Plaintiff was subjected to severe emotional distress, humiliation, ridicule, mental anguish and disgrace and was deprived of his liberty.

49. All of the aforementioned acts of the Defendants constituted false imprisonment under the laws of the United States Constitution and the Defendants are liable for said damage.

### FOURTH CLAIM FOR RELIEF: EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

50. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

51. The degree of force used by Defendants was excessive, unreasonable, and unwarranted.

52. Defendants' actions were intentional, willful, malicious, egregious, grossly reckless and negligent, unconscionable, and unprovoked.

53. As a result of the excessive force and brutality, Plaintiff sustained multiple injuries to his wrists and body and endured serious emotional and psychological distress.

54. All of the aforementioned acts of the Defendants constituted excessive force under the laws of the United States Constitution and the Defendants are liable for said damage.

### FIFTH CLAIM FOR RELIEF: FAILURE TO INTERVENE UNDER FOURTH AMENDMENT – 42 U.S.C. § 1983

55. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

56. Members of the NYPD have an affirmative duty to assess the constitutionality of interactions between their fellow members of service and civilians and to intervene where they observe another member of the police department employing unjustified and excessive force against a civilian or falsely arresting a civilian.

57. The defendant officers were present at the intersection of Orchard Avenue and Canal Street in the City of New York, State of New York and in the vicinity of Plaintiff's arrest and witnessed other officers, *inter alia*,

a. Search Plaintiff without cause

b. Falsely arrest Plaintiff, and

c. Use unlawful force against plaintiff, including pushing Plaintiff into a police car and punching her.

58. The search of Plaintiff's person was clearly made without probable cause, reasonable suspicion, or any other legal justification, yet defendants failed to take any action or make any effort to intervene, halt or protect plaintiff from the illegal search.

59. Defendants' violated Plaintiff's constitutional rights by failing to intervene in the illegal search of Plaintiff, his arrest or Defendants' clearly unconstitutional use of force that resulted in injury and damages.

### SIXTH CLAIM FOR RELIEF: MUNICIPAL LIABILITY

60. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

61. The acts complained of herein were carried out by the Defendant officers in their capacities as police officers, employees and officials pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said departments.

62. Prior to October 28, 2013, NYC and NYPD developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of persons in NYC, which caused the violation of Plaintiff's rights.

63. It was the policy and/or custom of NYC and NYPD to inadequately and improperly train and supervise its police officers, including the defendant officers, thereby failing to adequately discourage further constitutional violations on the part of its police officers.

64. It was the policy and/or custom of NYC and NYPD to inadequately and improperly investigate complaints of misconduct against police officers filed by persons in police custody, and acts of misconduct were instead tolerated by NYC, including, but not limited

to the following incidents: assault and battery, harassment, negligence, intentional infliction of emotional distress and deliberate indifference to medical needs.

65. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff.

66. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the proximate cause of the constitutional violations suffered by Plaintiff as alleged herein.

67. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and the NYPD were the moving force behind the constitutional violations suffered by Plaintiff as alleged herein.

68. As a result of the above described policies and customs, police officers of NYPD, including the defendant officers, believed that their actions would not be monitored by supervisory officers and that their own misconduct would not be investigated or sanctioned, but instead would be tolerated.

69. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of Plaintiff.

70. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate officers and were directly responsible for the violation of Plaintiff's constitutional rights.

71. Defendants NYC, as municipal policymakers in the training and supervision of Defendant police officers/employees, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violations of their freedom from

deprivation of Liberty without Due process of law in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of the State of New York.

72. All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

    a. Not to be deprived of liberty without due process of law;

    b. To be free from unreasonable search and seizure under the Fourth and Fourteenth Amendments to the United States Constitution;

    c. To be protected against violations of his civil and constitutional rights;

    d. Not to have cruel and unusual punishment imposed upon him; and

    e. To receive equal protection under the law.

**SEVENTH CLAIM FOR RELIEF:**
**CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS**
**UNDER 42 U.S.C. § 1983, 1985, 1986**

73. Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

74. All the defendants, acting with each other individually and on behalf of and under the auspices and control of the City, and under color of law, conspired to injure Plaintiff in his person and property and deprive Plaintiff of his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights. The defendants jointly caused such deprivation of rights by acting in concert to disseminate false information concerning the Plaintiff and by disseminating false information that lacked any reasonable basis or probable cause to support it that the Plaintiff committed a crime, and/or to charge him with a crime, and/or to arrest him.

75. The defendants further deprived the plaintiff of his due process rights specifically by conspiring to and assisting in the arrest of the Plaintiff without probable cause and participating in the prosecution of plaintiff; by denying the Plaintiff his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights via a conspiracy to deprive the plaintiff of his liberty and taking his property without due process and compensation; conspiring together to cover up the misconduct they committed; and preventing the Plaintiff from being compensated for his wrongful arrest, for the loss of his constitutional rights, the loss of his job and for the emotional harm he suffered.

76. The aforesaid actions by the defendant police officers were done pursuant to an official municipal policy or custom of the city and state, which policy involved the indiscriminate detention, interrogation, intimidation, denial of medical attention, and prosecution of individuals who were not engaged in criminal conduct, and for the purpose of thwarting the fair administration of justice.

77. The defendants' failure to stop these wrongful acts and actions constitutes a breach of their duty to do so under 42 U.S.C. § 1986.

78. The defendants knew or should have known that the misconduct and false and fabricated accusations and/or charges against plaintiff were violative of his First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights to due process and equal protection, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the Constitution.

79. Said defendants had the power to prevent the continued due process violations against the plaintiff, yet had failed to prevent the dissemination of false information and/or to

dismiss the fabricated accusations and charges against plaintiff, and/or to protect the plaintiff from the unwarranted and potential harm and penalties of said charges.

80. Defendants herein, their agents, servants and employees, motivated in part by racial and/or ethnic animus, conspired to deprive Plaintiff of his federal civil and constitutional rights, in violation of 42 U.S.C. § 1985.

81. All of the aforementioned acts of Defendants constituted a violation of Plaintiff's civil rights provided to him under the United States Constitution and 42 U.S.C. § 1983, 1985, and 1986.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against the Defendants:

1. Special and compensatory damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) DOLLARS; and

2. Punitive damages in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00) DOLLARS; and

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court deems just and proper.

DATED: New York, New York
January 28, 2015

> Respectfully submitted,
>
> /s/ Kaitlin F. Nares
>
> Kaitlin F. Nares, Esq. (KN2953)
> FISHER, BYRIALSEN & KREIZER PLLC
> *Attorney for Plaintiff*
> 291 Broadway, Suite 709
> New York, New York 10007
> (212) 962-0848